UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ANDERSON, RICHARD BEAUDOIN,
TIMOTHY BELL, CHAD COUSINO, WILLIAM
CURRIE, DANIEL DORAN, JEREMY JOHNS,
BOBBY LAVENDER, JOHN MESKY, STANLEY
POCHRAN, GEORGE QUIROZ, ALEX ROMAN,
JOSE STACHULSKI, JOE SERVETTER, SHANNON
THRELKELD, JAMES M. URSITTI, GREGORY
WARD, and ALBERT YOUNG,

       Plaintiffs,                         CASE NO. 04-74345

-vs-                                             PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE
CITY OF TAYLOR,

       Defendant.
_____/

**ORDER DENYING IN PART, GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND**

The facts are as set forth in this Court's August 11, 2005 Order.

This case stems from a wellness program the City of Taylor Fire Department, enacted for its employees, which required a mandatory blood draw. The Federal Emergency Management Agency ("FEMA") created the "Assistance to Firefighters' Grant Program" to provide funding directly to fire departments for the purpose of protecting the health and safety of the public and firefighting personnel against fire and fire-related hazards. (Aug. 11, 2005 Order 1).

Grant funding was designated for six categories: training, fitness program, vehicles, firefighting equipment, personnel protective equipment, and fire prevention programs. The local funding matching requirement for a fire department, like Taylor's, whose population served is

greater than 50,000, is 30%. (*Id.* at 1-2).

In the late 1990s, the Taylor Fire Service Joint Labor Management Wellness-Fitness Initiative was created.   The goal of that initiative was to improve the quality of life of all uniformed personnel.  The project sought to maintain fit, healthy and capable firefighters and EMS responders throughout their career.  (*Id.* at 2).

The FEMA grant application package sets forth the required information for the preparation of the grant proposal.  Regarding the wellness and fitness programs, the package states:

> FEMA may make grants for the purpose of establishing and/or equipping wellness and fitness programs for firefighting personnel, including the procurement of medical services to ensure that the firefighting personnel are physically able to carry out their duties (purchase of medical equipment is not eligible under this category).
>
> We believe that in order to have an effective wellness/fitness program, fire departments must offer both an entry physical examination and an immunization program.  Accordingly, applicants for grants in this category must currently offer both benefits, or must propose to initiate both a physical examination and immunization program with these grant funds in order to receive additional funding for either of these purposes.  We believe the greatest benefit will be realized by supporting new wellness and fitness programs, and therefore, we will accord higher competitive ratings to those applicants lacking wellness/fitness programs over those applicants that already posses a wellness/fitness program. Finally, since participation is critical to receiving any benefits from a wellness or fitness program, we will give higher competitive rating to departments whose wellness and fitness programs mandate participation as well as programs that provide incentives for participation.

(*Id.*).

The Taylor Fire Department's proposed narrative provided that participation in the program was mandatory, along with a fitness incentive for participation in the program. (*Id.*). The fitness incentives included a free membership for each employee for the city's recreational

facility which contained both cardiovascular and strength training equipment. (*Id.*). The proposed incentives also included free rounds of golf at the city-owned golf courses and blocks of ice time at the city's arena. (Aug. 11, 2005 Order 3).

Former Defendants Fire Chief Kenneth Costella and Deputy Fire Chief Vincent Fedel were notified that the Taylor Fire Department's grant was accepted on August 1, 2001. The federal share of the grant was $105,400.00 and the City's share of the cost was $45,171.00. (*Id.*).

The wellness program instituted by the Taylor Fire Department included health appraisals by the Oakwood Hospital staff. This appraisal included a mandatory blood draw, which forms the basis for this lawsuit. The blood draws were used to obtain a "Lipid Profile test" to find out Plaintiffs' cholesterol, triglycerides, HDL cholesterol, VLDL cholesterol, and LDL cholesterol. (*Id.*).

Plaintiffs Jason Anderson, Richard Beaudoin, Timothy Bell, Chad Cousino, William Currie, Daniel Doran, Jeremy Johns, Bobby Lavender, John Mesky, Stanley Pochran, George Quiroz, Alex Roman, Jose Stachulski, Joe Servetter, Shannon Threlkeld, James M. Ursitti, Gregory Ward, and Albert Young (collectively "Plaintiffs") were required to submit to these blood draws. Plaintiffs contend that these blood draws violated their constitutional rights.

On July 22, 2002, the IAF Local 1252 Union filed a grievance on behalf of Plaintiffs stating that the blood draw violated their collective bargaining agreement. Chief Kenneth Costella denied the grievance on July 23, 2002. As a result of the Plaintiffs' union grievance, the Taylor Fire Department sought permission from FEMA to abandon any further follow-up regarding the blood draws, which FEMA granted. (*Id.*).

Plaintiffs brought suit against Fire Chief Kenneth Costella, Gregory Pitoniak, the Mayor of Taylor and Deputy Fire Chief Vince Fedel and the City of Taylor ("Defendants").  Plaintiffs set forth two counts against Defendants: Count I (Deprivation of the Plaintiffs' Civil Rights as to all Defendants), and Count II (Deprivation of Plaintiffs' State Constitutional Rights). Defendants filed a motion to dismiss and/or summary judgment on April 12, 2005.  This Court treated the motion as a motion for summary judgment based upon the submission by both parties of evidence outside the record.

In an Order dated August 11, 2005, this Court granted judgment to the individual Defendants on the basis of qualified immunity.  The Court further denied judgment to Defendants on Plaintiffs' Fourth Amendment issue only.  Defendant City of Taylor ("City") is the sole remaining defendant in this action.

Defendant City of Taylor and Plaintiffs filed cross-motions for summary judgment, and responses and replies to the respective motions.

### III.    STANDARD OF REVIEW

A claim should not be dismissed for failure to state a claim under FED. R. CIV. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  When ruling on a motion to dismiss, a court must consider all affidavits and pleadings in a light most favorable to the plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal.  *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003)  (citing *Dean v. Motel 6 Operating, LLP,* 134 F.3d 1269, 1272 (6th Cir. 1998)).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the nonmoving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The nonmoving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

**IV.   DISCUSSION**

Defendant argues that neither Plaintiffs' original Complaint, nor Plaintiffs' Amended Complaint, contain any allegations concerning any alleged unconstitutional conduct by the City of Taylor. In essence, the City is alleging that Plaintiffs have failed to state a claim upon which relief can be granted, which is the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As the City should be aware, motions to dismiss under Rule 12(b)(6) must be raised with the initial answer or they are deemed waived. Here, the City answered both the original Complaint as well as the Amended Complaint and never raised the failure to allege unconstitutional conduct by the City of Taylor. Thus, the Court finds that this argument has been waived**.**

Furthermore, the Court holds that the City's aforementioned argument is without merit because Plaintiffs did adequately plead their claim for deprivation of civil rights by the City of Taylor. The notice pleading provisions of Federal Rule of Civil Procedure 8(a)(2) only require that a plaintiff make a "short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has specifically declined to require a heightened degree of notice pleading for § 1983 claims against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Plaintiffs state in paragraph 17 of their Amended Complaint:

17. Under color of state law and either by explicit act or by accepted custom, the Defendants did violate the Plaintiffs' 4th Amendment and/or 14th Amendment rights to be free from unreasonable searches and seizures as well as 5th Amendment and/or 14th Amendment rights to due process of law contrary to 42 U.S.C. 1983.

In addition, the background section of the Amended Complaint states that "Defendants ordered the Plaintiffs (and other Department employees) to submit to mandatory blood draws and/or physical examinations . . . ." (Am. Compl. 14). The City of Taylor is included in this class of "Defendants." Accordingly, the Court finds that Plaintiffs have adequately pled deprivation of their civil rights by the City of Taylor.

Next, Defendant argues that Plaintiffs have failed to demonstrate that there is a direct causal link between any policy of the City of Taylor and the alleged constitutional violation. The City states that it did not engage in any "deliberate conduct" that could be deemed the "moving force" behind the violation.

In order to find a municipality liable under § 1983, a plaintiff must prove that the alleged constitutional deprivation resulted from a custom or policy of the municipality. *See Monell v.*

*Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). To prove a municipal custom or policy, a plaintiff must show a direct causal link between the policy and the alleged constitutional violation "such that the 'deliberate conduct' of the governmental body is the 'moving force' behind the alleged injury." *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Municipal liability cannot be based on the theory of respondeat superior." *Waters*, 242 F.3d at 362 (citing *Monell*, 436 U.S. at 691).

"Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, . . . proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Brown*, 520 U.S. 397 at 405. "Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.*

The Court finds that there is no genuine issue of material fact concerning whether the City of Taylor approved the passage of an unconstitutional custom or policy. The health/wellness program, approved by the City, called for a cholesterol screening; this screening could only be conducted by withdrawing blood from each person.

This program was also mandatory, as noted in:

(1) the Project Narrative sent to FEMA with the application for funding, (*see* Defs.' 4/12/05 Mot. Ex. 4, Docket Entry 10);

(2) the "Questions for Wellness and Fitness Programs" which has circled the word "Yes" in response to the question "Will participation in the wellness/fitness programs be mandatory?"

Deputy Chief Fedel admitted during his deposition that it was anticipated that the services provided as part of the program would include a mandatory blood draw. (Pls.' Mot. Ex. 2, Fedel Dep. 28-29).

Defendant argues that even if the program was mandatory, the drawing of blood itself for the cholesterol screening was not, and that Plaintiffs could opt out if they so desired. Defendant also contends that no punitive action would be taken if a firefighter declined to have his blood drawn.

This Court previously held in its August 11, 2005 Order that such a mandatory blood draw was unconstitutional. The Court also held that the individual defendants were protected from liability by qualified immunity. As testified to by Chief Fedel, the City Council approved of the grant application that allowed for the Fire Department to conduct the mandatory blood withdrawals. (Fedel Dep., Pls.' Mot. Ex. 2, 16). The fact that several council members stated that they would not have approved of the program had they known the mandatory nature of the program to withdraw blood does not negate that the City was responsible for the implementation of an unconstitutional program. The program was undeniably mandatory and provided for cholesterol screening, which could only occur through the withdrawing of blood. Defendant's attempt to separate the blood withdrawal from the entire program is unavailing. In addition, the Court finds that the designation of the program as non-punitive in nature meant that a firefighter would not pe punished for having low test results, not that they could be excepted from

9

participation in the program.  There is no support in the record for this latter interpretation of the program's terms.

In the April 12, 2005 brief in support of all then-Defendants' Motion for Summary Judgment, Defendants stated:

> [After FEMA approved the grant application for the wellness/fitness program,] [t]he *city* then proceeded with obtaining bids for exercise equipment as well as medical staff costs.  Cholesterol screenings were documented at $30.00 per client x2 [sic.] screenings in the amount of $3,960.00.

(Defs.' 4/12/05 Mem. 4) (emphasis added).  Defendants further stated that Deputy Chief Fedel authored an inter-office memorandum to schedule the health screenings with Oakwood Hospital, which advised that each employee should fast prior to having their blood drawn.  (*Id.*). Defendants then noted that the results of the screening were sent only to the firefighters "in order to assure that this testing would be non-punitive." (*Id.*).  Defendants' brief failed to establish that the program never envisioned the withdrawal of blood.  Rather, Defendants only argued the innocuous nature of the blood draw, stating that Plaintiffs' "entire claim involves a pin-prick of blood, the results of which were reported to them personally." (*Id.* at 5).  Defendants also stated that FEMA allowed the City to abandon any further follow-up regarding cholesterol or other type of blood testing as a result of Plaintiffs' union grievance.  (*Id.*).

Based on the above, the Court finds that the City Council's approval of the grant application to FEMA for funding for the program enabled Deputy Chief Fedel to order that blood be withdrawn from Plaintiffs.  The City Council was indeed the final policymaker in question; if the City Council had not approved of the application, then the program could not have been approved by FEMA as a grant recipient, and Deputy Chief Fedel would have had no basis to order the blood withdraw.  (*See* Costella Dep., Pl.'s Ex. 4, 25).  Accordingly, the City of Taylor

cannot claim that its own policy or custom is not at fault for the constitutional violation. Defendant's Motion for Summary Judgment is denied, and Plaintiffs' Motion for Summary Judgment on this issue is granted.

Finally, Defendant argues that judgment is appropriate on Plaintiffs' Count II for deprivation of state constitutional rights. Plaintiff concedes that this count should be dismissed. Thus, the Court grants judgment to Defendant on Plaintiffs' Count II.

**CONCLUSION**

For the reasons stated above, the Court DENIES IN PART, and GRANTS IN PART Defendant's Motion for Summary Judgment. Specifically, Defendant's Motion for Summary Judgment on Plaintiffs' § 1983 claim is DENIED, but judgment is GRANTED on Count II for deprivation of state constitutional rights. Further, the Court GRANTS Plaintiffs' Motion for Summary Judgment.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 9, 2006.

S/Jonie Parker
Case Manager

11